also known as Yonas Sebside, appellant. Ms. Hernandez for the appellant, Mr. Smith for the appellate. Ms. Hernandez, good morning. May it please the court, Carmen Hernandez for Appellant Law Bowl, at counsel table with me, or the counsel for the other two defendants. None of us represented the defendants during the trial of the case. After trial and after conviction, each of the three defendants requested new counsel, and the district court granted them. Mr. Martin and I were counsel at the sentencing. Ms. Davis is only appellate counsel. Your Honor, essentially in this case, we're asking the court to remand for a hearing on ineffective assistance counsel. This is one of many cases that are referred to as Stash, reversed in Stash House cases, which were brought or which were prosecuted, investigated by the ATF throughout the United States. I think there were more than 1,000 cases. They're being litigated all over the United States, and in Chicago in particular, they are presenting arguments that these cases involved outrageous government conduct and selective prosecution of minority defendants, because I believe something like 90, more than 90% of the defendants are all either African American or Latinos. In my case, Mr. Lobo was a young man in his 20s, had no prior convictions for any crimes of violence or drug offenses. He had a minor simple possession misdemeanor offense in Maryland, and he also had a domestic violence argument that originally was deferred, but then when this case arose, was brought back up. For more than, for almost a year, a good friend of his, at the behest of the ATF or other agents, tried to get him to sell drugs. The only thing they were able to accomplish were a 14 grand sale of cocaine in July of 2012, and in February of 2013, my client lent his friend $700 because his friend said he needed the money to purchase drugs, and at that point, they went and met the agent, one of the undercover officers. The friend handed over 16 grams of cocaine, and the agent gave my client $700. At that meeting, the undercover agent tries to get my client to get involved in a stash, and he first lures him into it by saying, I have a renovation project in the storefront, are you interested? Because my client had been working more than 45 hours a week at a granite place. He lived in D.C. and drove to Ole Miss Mills. At sentencing, I introduced all the records of his employment, you know, his timesheets, which were not introduced by his trial counsel, and also phone records, which showed that his friend had contacted him 131 times during the two months immediately preceding the final sentence. And that was the final meeting for the alleged conspiracy to commit the Hopsack robbery took place. We believe that as a matter of law, that's the type of inducement that's necessary to prove an entrapment case. Right. To be clear, your position is that with that evidence, a jury would have been legally compelled to find entrapment, or just a jury could have found entrapment? Well, I think there are lots of cases, Supreme Court cases, they go back a while, where such evidence would have been sufficient to find as a matter of law that there was entrapment. But at a minimum, with the evidence, we could have... So you think, had this all been put before a jury, and the jury still came back and said, we don't find entrapment, who read their minds, they would say he showed up with guns. That verdict would have to get reversed as a matter of law. That's pretty strong entrapment evidence for that. What I'm saying is there's several Supreme Court cases, including Jacobson and others, where the courts found as a matter of law that it was entrapment. But I'm not arguing that here. I'm just arguing there was sufficient evidence that with that evidence, the district court would have had to give an entrapment instruction. So this is an ineffective assistance of counsel argument? Yes. That's all? You're not presenting it as an independent argument? I'm presenting it as... I did present it as an independent argument below, and here also. I concede that it's a more difficult argument to argue that as a matter of law, it's entrapment. Although, as I say, there are ample Supreme Court... There's at least two or three Supreme Court cases. And you say those cases are what? Jacobson? And what are the other ones? I believe Smith. One involved... I'm sorry, they're in the... I don't have them on the top of my head. One involved a sale of alcohol during prohibition. One involved Jacobson. And another one, I believe, involved a gun. There's at least three Supreme Court cases. That's a greater burden that I'd like to take on, but it's a possibility. I'm just... The failure... Given the evidence in the case, the failure to argue an entrapment defense in this case made no sense. And it can't be... It is a call that has to be returned to the district court for a full-fledged hearing on ineffective assistance of counsel. And there are sufficient factual issues that cannot be resolved at this level. Unless the court were to find, as a matter of law, that this was entrapment, at a minimum, it has to go back to the district court for a full-fledged argument on ineffective assistance of counsel. With respect to the 924C claim, we've asked the court to defer until the Supreme Court rules in Lynch v. DiMaia. They heard oral argument in January. The language that they're considering is identical to the language in 924C. So if DiMaia loses, would you concede that you lose the 924C argument? No. We believe... So I guess it's not quite so identical. Well, on the... There's two issues before... I assume they don't go off on the civil versus criminal. Right. Then the argument we have is that a conspiracy to commit a Hobbs Act robbery, not a Hobbs Act robbery itself, but a conspiracy to commit a Hobbs Act robbery, categorically, is not a crime of violence. But that would not be the constitutional vagueness argument. Correct. Right. So only as to your constitutional vagueness argument, if DiMaia loses on the merits of that, not a civil versus criminal ruling, on 16B, we concede that this argument as to 924C also goes away? It's the identical. On vagueness grounds. But the language, unlike the Johnson case, which is similar language, the language that the Supreme Court is considering in DiMaia is identical to the language in 924C. The language that the Supreme Court is considering is 16B language, and there's no difference. It's identical. But the substantive argument, I don't know how... The non-constitutional argument that a conspiracy cannot be a crime of violence, I rely on this court's decision in Sheffield in 2016, I believe, where the court found that an attempted robbery was not a crime of violence for purposes of, I believe, a career offender or an armed career criminal case. And this court's reasoning was that there's no attempt, an inchoate crime, just like conspiracy, there's neither an element of violence nor by its nature can the offense be determined to be a crime of violence. We also argued on the ineffectiveness claim that the failure to seek to suppress the audio tapes was ineffective. There are multiple factual issues that cannot be resolved by this court and that must be returned to the district court for a full-fledged hearing. And then this case stands in an interesting position because, obviously, the defendants sought new counsel after trial, and the district court... I know district courts are fairly lenient when a conflict arises, but the defendants' position before sentencing was that they had received an effective assistant counsel. And to the point, at least the court, it may have been for multiple reasons, but at least the court granted new counsel. So I believe there is a... the framework for an ineffective assistant counsel claim was already argued before sentencing. This isn't a situation where the district court, where these clients are raising these issues for the first time. Going back to the entrapment, the fact that the trial counsel did not introduce, subpoena, or introduce either the work records, which are... in a criminal case, when you've got documentary evidence that supports your claim, that supports the defendant's claim, there's absolutely no strategic reason for not investigating, subpoenaing, and introducing that evidence. And it was work records and phone records that showed the multiple calls going from the informant to the defendant. It just made no sense. An extraordinary number of calls that ended just about the time when the... when the conspiratorial agreement took place. At sentencing, we also have race claims. This court decided a very similar case and remanded for resentencing. When I say a very similar case, the Stash House case, that case was sentenced before Bigley, where this court found that... What's the name of our case that you're referencing right now? Bigley. Oh, I'm sorry. Bigley is... Oh, you say this case was before Bigley. Okay. I thought you were... Yes. I'm assuming that's what you're saying. This court remanded for resentencing to consider, at a minimum, whether there should have been a downward departure or a variance based on the entrapment. That is, when defendants are entrapped, as we believe, even if it's not as a matter of law, a full defense, at a minimum, it is a mitigating factor to the extent that it reflects that the defendants may not be as culpable or as dangerous as would be a defendant who devised, concocted, and committed the crimes without any government involvement. But in this case, the court found that, for purposes of sentencing, there was no such entrapment mitigation because, this is what we found, was they showed up at the scene with the guns, were offered many opportunities to back out, and didn't. So I'm not sure what the basis for sending it back would be. How would we disagree with that? Well, but that's... By definition, entrapment means you've admitted you've committed the crime. So it's not what you did on the date of the conspiratorial agreement. It's what preceded it. They were given many opportunities to back out. The other case was identical. The fact pattern was identical. The McKeever case, the fact pattern was identical. Same agents. I represented the defendant that sentencing in that case. Government trial counsel were the same. Identical fact pattern. I mean, it's a script. And again, entrapment, as the Supreme Court laid out in Jacobson, you look at whether there was inducement by the government and whether there was predisposition. If it rises to the level of the complete defense, then that's a defense to entrapment. But even if it doesn't rise to the level of complete defense, you still have to look at those two pre-crime factors. Inducement and predisposition. Predisposition, you look at if you have prior convictions for robberies, if you have gun offenses. Did the government know about it when they were enticing them? Can I ask you one quick question before you run out of time on the suppression of the hoodies? Assume that were error and they should have been suppressed. What difference would that have made in this trial? I'm sorry, Your Honor, you're talking about the hoodies and the shirts that were found in the car? Again, it is corroborating evidence as to one, as to the government's theory of the case or as to the defense theory of the case. Do you have any argument that the case would have, the probability would have come out differently without the hoodies being introduced in evidence? Yes, because it led to the... It supported the government's argument that these guys came in prepared to do this and there was no... No, but the jury already had the guns. The guy's all there. They're on video. There's no video of the guns. No, they're on video coming into this warehouse, having this discussion. They're all there. They're on video not backing out. They have the guns for the evidence, for purposes of what's before the jury. I'm just trying to figure out if the hoodies matter. Again, that's why the entire case has to turn on entrapment because this is what this is. As I say, this is a script used by these officers. There have been acquittals. There was an acquittal in the Eastern District of Virginia based on entrapment. I continue to say it's a script that they use. The same agents use it. They make the crime less morally culpable because they tell them that the person... It's someone whom they fronted drugs to and they owe their own money. They also have a person on the inside who's going to help them pull it off. It makes it less dangerous and less morally culpable because we're not just trying to steal money. We're trying to get back our goods. My argument to the court is that the whole case is wrapped up around the failure of defense counsel to argue entrapment. That failure, in my opinion, is based on a misconception which was also adopted by the district court. That entrapment, you looked at what happened on the date of the crime. No, no, no. Entrapment, as the Supreme Court has laid out, has to be viewed in terms of predisposition and inducing by the government before the crime is committed. My time is waiting. All right. We'll give you a couple of minutes to reply. Thank you, Court. Mr. Smith? May it please the Court, Peter Smith on behalf of the United States. I'll address Apollon's arguments in the order that she presented them this morning. First of all, with respect to the entrapment defense, Apollon's argument- Can you move that thing a little closer? There. Okay. There you go. Is that better? With respect to the entrapment defense, the argument that Apollon is advancing this morning is that counsel was ineffective for failing to present that defense or request a jury instruction. And the government's argument is that Apollon's wouldn't have been entitled to a jury instruction on entrapment. Therefore, there was no deficient performance of counsel. The defense has the burden of showing inducement. And the things that Apollon has identified this morning, friendship, the fact that Lovo had a job, the fact that a cooperator contacted Lovo repeatedly wouldn't be sufficient to overbear the will of a person, which is the standard articulated in Glover. Just the opposite. Lovo and his co-defendants indicated that they were not reluctant, that they were ready and willing to engage in the conspiracy. They brought the guns. They brought the tools of the robbery. They boasted about their ability to complete the strong-arm robbery. They rejected repeated opportunities to withdraw. So on that basis, there wouldn't have been any predicate for the giving of a jury instruction. The ineffective assistance claim, though, has a lot of different components. And usually we would remand to let the district court sort that out in the first instance. Isn't that the appropriate course here as well? I think not, because here you have conclusive. The government could demonstrate conclusively that appellants are not entitled to an instruction as a matter of law. And that's a determination. But it's got the evidentiary, the failure to object to some of the evidentiary, some of the evidence as well as part of the ineffective assistance. Oh, you're saying the other claims that they're raising. Right. They have a lot of several different components to the ineffective assistance claim. And as you know, our case law and I have said we shouldn't be dealing with those kinds of fact-laden ineffective assistance claims in the first instance, but should simply remand those almost automatically. I think that a remand was not warranted here. And we can go through each one of the different arguments that appellants raised. I didn't hear her making some of those other arguments here. But I guess my response would be some of these issues are simply legal, like the entrapment issue, that this court can resolve. And the other issues are conclusively demonstrated in the record, so there wouldn't have been deficient performance. And this is all articulated in the government's brief. Or, you know, this court could conclusively determine that appellants wouldn't have been prejudiced. For example, if the argument is counsel was ineffective for failing to, you know, jack to the audio and the videotapes, you know, even setting aside our merits arguments on why those weren't admissible anyway so there was no deficiency. If appellant's argument is true, those tapes would be, you know, inaudible. They wouldn't be prejudicial. I mean, the jury would get this pile of tapes and it would really, you know, they were neither here nor there if they were truly inaudible. Well, the problem is that they have then have an agent interpreting. They're not only garbled. They weren't inaudible. They were called in and out, words would go in and out. They're in a foreign language that the jury didn't speak. And you have the agent there saying, here's what was being said. And the jury has no way to check the veracity or validity of what the agent's saying. They have nothing. They're just sort of helpless. So they have no choice but to accept it because the tapes are such poor quality and they're in a foreign language and no transcript is being offered to them. Well, some of the tapes are audible. Some of the tapes or the video is in English. And as to the court's point where the tapes in English or the video. I'm sorry? Are the tapes in English or only the video? Some. I think there's some English. There's some sort of. Well, let's just deal with the Spanish ones because that's right. So the jury doesn't speak Spanish. They aren't given a transcript. Right. What ability do they have to verify or test the veracity of what the agent has said in those conversations? Well, they had that ability during the trial process. How? Because. They don't speak Spanish. They can't tell if the agent's accurate or not. Well, Appellant Lovo was able to testify about the meaning of the language in the tapes and in the video. And the defense explored this during cross-examination. And the jury was instructed not to reach out and interpret for themselves the Spanish. So, as I said, that would be sort of a nullity. They wouldn't have been able to look at that. So you had the government's witnesses describing what was happening on the tapes. And then you had the defense ability to either. Not what was happening. What was being said. Not just what was happening. What was being said. And they could have done that even without the tape. So. And I guess I would also add that, you know, appellants didn't, until there were five briefs, challenge the Spanish language aspect of the tapes and of the video. And that, I would say. You don't think they forfeited that? Well, I mean. It's a little tough. Well, I mean, even if the court weren't going to accept that. I mean, the tapes are admissible for other reasons also. I mean, aside from the Spanish and the fact that there's no prejudice. If nobody understands what's happening. You have. That, you know, to the extent that somebody can hear the audio and the tenor of the voice. Someone can see what's happening on the video. They're all admissible for those purposes separately. So, you know, when the court is looking now at ineffective assistance. It's not looking at. The appellants haven't been arguing about the merits of whether the tapes were admissible. Now they're arguing that the defense should have objected on these bases. And, you know, so our argument is that there's no deficiency because the tapes were admissible. There was no reason to object. And to the extent that, you know, Judge Millett is concerned about specific instances. The defense did object in those instances. And there's one cited in our brief where Sorda's counsel says. Hey, I can't hear on that tape what's happening there. And there's a discussion. And there's a more accurate translation of that. What's happening at that time. So, you know, that all goes to whether there's ineffective assistance. The defense did address all those things. And then. There wasn't an objection to the Spanish language aspect of it, though, correct? Correct. The fact that it was in Spanish. And we've, in our brief. And no transcript could be provided. Well, the government had, you know, tried to prepare a transcript. But they weren't there. That's the point. They weren't prepared. And it's not your fault. I understand. But the question then is, without the transcripts. And some of the tapes being in Spanish. Was there an ineffective assistance in failing to object to that? And usually we don't resolve that kind of claim in the first instance. Usually not. Unless that case is conclusive. And I think it is here. And, I mean, the deficiency. Even if you set aside whether they should have objected to that. And I would argue that they did periodically make objections. Not enough to preserve. To get themselves out from plain error. But they did object at points. And in any event, I think that the deficiency prong is not satisfied here. And that that is conclusive. I mean, if the argument is, you know, the jury. There was some Spanish language. There was some stuff that's inaudible. I don't. You know, the jury was instructed not to interpret for themselves. The officers interpreted. They were cross-examined. Lovo, the defendant, was able to give his interpretation. Because he testified. So, you don't really have any prejudice in anything else that was admitted. Because the jury wouldn't have been able to make anything out of that. So, if there are no further questions about the ineffective assistance claim. I would want to address briefly some of the other things that appellant's counsel raised this morning. On the 924C claim, I just wanted to make two quick points. The point that appellant made this morning that conspiracy doesn't. That conspiracy offense can't satisfy 924C's residual clause. Is an argument they made for the first time in their reply. And this court should not consider it. I also wanted to address dependency of DiMaia in the Supreme Court. It seems to us that once DiMaia is decided by the Supreme Court, this court ought to perhaps order the parties to brief the effect of that decision here. And I can explain in more detail why we think that. On your first point, do you think they're wrong? You say they didn't raise it in a reply brief. Are they wrong? I think that's an open question. And I think that I'm not sure that the government is taking the position that it would defend conspiracy offenses as satisfying. No, I do think they're wrong. I take that back. I thought we circled around to that. I'm sorry. I was thinking about the onus clause. The government has said it wouldn't necessarily defend that conspiracy offenses satisfy the elements clause. But the argument we're talking about now is the residual clause. Right. And so I do think they're wrong about that. And, you know, the government didn't brief it because they didn't raise this. They didn't make this argument until their reply. They just assumed in their opening brief that conspiracy offenses did satisfy the residual clause. And they made the argument that the residual clause was vague and unconstitutionally vague, following Johnson. And so, you know, as I suggested, we don't know what the DeMaio decision is going to look like from the Supreme Court. It may behoove the court to ask the parties for supplemental briefing on that issue. Are you disputing that the language is identical if, for example, DeMaio prevails on unconstitutional vagueness? They just said they just extend Johnson to 16B, at least in the criminal context, criminal law context. Would there be anything left to argue? Yeah, we think that there is. We asked your opinion at the time, but. I mean, again, it would depend on what the Supreme Court's decision looks like. But even if it made a straight Johnson ruling, it said, you know, 16B didn't address the immigration. And I'm talking about the Supreme Court. It didn't address the immigration context. It just said 16B is unconstitutionally vague. We think that 924C is distinguishable still. It is more concrete because it has, you know, lesser – it involves firmer predicates. It's an offense that involves the use of a weapon in the course of using and carrying a weapon. So the scope of offenses is more limited. And so the context and the purpose. It also has to be an offense under federal law, which we have in 16B. So it's an error of body. Right. So even though the textual language is virtually identical, it's not literally identical. I think there's a couple words that are different. But it's virtually identical. But that doesn't resolve the question. So even if DiMaio held that the defense won on vagueness grounds on 16B, that doesn't say anything necessarily about 924C. So that's why we would suggest the court ought to have additional briefing. With respect to the other two claims that appellant raised this morning, the audio tapes, I suppose that we've addressed that earlier today to the court's satisfaction. I see Judge Kavanaugh shaking his head. And the other thing, the sentencing, I just wanted to make two quick points. Appellant's argument this morning is that this court, I guess she's arguing, should remand for resentencing because of Bigley error at sentencing. And counsel was citing McKeever. And McKeever and Bigley are different from this case. That really was a straight Bigley error. And just to simplify this, the error in that case was that the government brought the guns or the drugs into the operation. And that's not the situation here. The government's evidence, and even appellant Lovo testified that he brought the guns. He said to sell them. But the evidence here is that the government did not provide the guns. So there was no guideline bump because of the government's conduct. And therefore, McKeever and Bigley are inapplicable. This case is just a straightforward case of flock where the court was presented with arguments under Section 3553A about appellant's history and characteristics and heard those arguments, applied 3553A, applied those factors, and recited all of appellant's mitigation arguments. And we go through that in our brief where she does that. So it's not Bigley error. It's the usual case, which would be lock, where as long as the district court adverts to the relevant sentencing statute and gives some reasons, it's done enough. And there would be no need for resentencing in that situation. I have a question about the search, the Fourth Amendment suppression motion with respect specifically to the shirt and hoodies. Do you have a... First, I just have two questions. One, it looked to me, and I can tell you if I'm wrong, that you were no longer arguing plain view to this court. And secondly, does it matter? I don't think it matters. We're not arguing plain view here, and I don't think it matters. The government has a variety of different arguments in our brief, and we can go through those. We think that appellants lack standing under the Fourth Amendment. But even if you set that aside, the seizure of the hoodies and the masks from the passenger compartment of the car, and these weren't sealed. These weren't taken from sealed locations. They were on the seat. So that was sustainable, either under Gant or under the automobile exception, because you have a whole series of conversations between law enforcement officers and appellants, where they talk about what they're going to bring to this final meeting in order to conduct the robbery. And those things included guns. Those things included the tools of the robbery, masks, and things like these. No, but did he do a search of the – if the theory here was we wanted to make sure there wasn't anything dangerous in the body of the automobile, did he – is there any evidence the officer did a search of the – I know you didn't go to the trunk till – or if you just flipped around, you didn't go to the trunk till after the war and put up just the main body. I thought the story was that he got into driving to the impound lot, and there they were in plain view, which would be inconsistent with an argument that, hey, we were worried about contraband and stuff being in there, so we need to do a search of the interior of the vehicle. I don't think those things are inconsistent. I mean, the officer didn't search the enclosed areas of the car. The officer did think that there were weapons in the car, which is why he drove it. They didn't wait for a tow truck. They did not take it to the MPD's impound lot. They took it eventually to the ATF headquarters because they wanted it to be in a location where it was actually guarded because they knew that there were weapons in the trunk of the car. But, you know, the course point is, okay, well, they thought there were weapons. They didn't search for them immediately. They didn't have to under the automobile exception. They had probable cause because they could have found the tools of the, you know, the robbery, which was the offense, within the car. So they had probable cause to search all areas of the car from the moment of appellant's arrest on. So the fact that they sort of bifurcated that, that the officer picked up the hoodies and took them initially and then they waited and they actually obtained a warrant for the enclosed spaces of the car. So the fact that he waited doesn't mean that there was some sort of Fourth Amendment violation with taking the shirts and the hoodies and whatnot. And I would disagree. Appellant's opening brief takes the position that the officer obtained those things under either plain view or perhaps in some sort of inventory manner. And, you know, that's not what happened here. The officer did seize them as evidence at that time because they were sitting on the seat and he was driving the car. But he was entitled to do that, again, at least under Gant and under the automobile exception because you had, you know, weeks of preparation for this final meeting where appellants have said, we're coming to the robbery prepared. We're going to have guns. We're going to have masks. We've done this before. We're ready for the robbery. You know, so that gave the police probable cause to search the car soup to nuts. And they did ultimately obtain a warrant. The search of the enclosed spaces was conducted pursuant to that warrant. You know, and that was the testimony at this prescient hearing. So, again, I mean, the Court's right then the only thing that wasn't seized according to, pursuant to a warrant was the things that were sitting on the seat, the hoodies. And, you know, that was permissible under these other rationales. And even if the Court disagreed, as the Court suggested earlier, that was the least of the government's evidence in this case. The government had overwhelming evidence of this conspiracy. We have appellants on the video. We have them manipulating pictures of the target of the robbery. We have them showing up to the final meeting. We have them bringing guns. We have them on video, sometimes in English, saying that they're prepared to conduct the robbery. I mean, the final day there is conversation in English. Ashton too is giving orders. And he's speaking at least some of the time in English. The final day is about a 40-minute videotape. And a good portion of that, they do speak in English. If there are no further questions, we urge the Court to affirm the judgment of the District Court. Thank you very much. Thank you. Ms. Hernandez, why don't you take a couple minutes, Ms. Hernandez? Just a couple of corrections. We did, in our opening brief, mention the fact that the tapes were in a foreign language. And that is at page 40 of our opening, page 40 in the red numbers of our brief. It's in the context. It says, when the recordings are in English, summary witness testimony is less likely to be infused with embellishment or misstatements, because the Court, and most importantly, the jurors, can discern for themselves. Page 40 of your brief? Of our opening brief. Page 40, the numbers at the top, the number at the bottom, the taped number is 29. The ledger that is imprinted when it's filed on ECF is page 40. It's page 29, yeah. Page 29, I don't know what page the Court wants to refer to it. So there is a reference. It's part of the argument that was made with respect to the suppression of the tapes. And what made it so harmful is that it bolstered the testimony of the officers. They're testifying more than a year after, years after the events. But because of the audio tapes that they're claiming they can hear or they can remember, then that bolsters their testimony. Otherwise, what you've got is somebody testifying about an event that happened two years earlier. So we think it was very problematic. And of course, the reason there are no transcripts is because the certified translator said, we can't transcribe this. We can't translate this because it's not clear enough for us to produce a translation. With respect to the argument on 924C, whether we made an argument, we made the argument explicitly below. And we argued, again, in our opening brief at page 14, that the predicate offense of conspiracy to commit a hopsack robbery does not qualify as a crime of violence as a matter of law. We didn't amplify it on it, but we certainly made the argument. We aren't just arguing that it's a vagueness argument. We made that argument and moved on to the vagueness argument. So we believe we certainly preserved it. And even where it hasn't been preserved, other courts, which we cite in our reply brief, other courts have found that touching error is cognizable in a 2255 case where it wasn't even raised below. So we believe it would, even if it wasn't properly raised as plain error, the court should consider it. We also, as far as this... Where you raised it in the opening brief, though, it said because it is void for vagueness, at least on page 14. You linked the two things. And as you said, you didn't amplify it. It's there, though. I'll give you that. We didn't amplify it. There's no question about it. But we certainly argued it in the post-trial motions that we filed because at the time, Johnson hadn't been decided yet. So we made the argument straight on. And there's no question that an inchoate crime doesn't meet either the nature of the offense nor the element of the offense 924C requirements. And I think it would be inconsistent with this Court's decision in Sheffield. The Court asked... The other... The other... If the Court will allow us, I will submit to the Court the other Supreme Court cases on entrapment. I believe that there's at least one case that we filed in our reply brief. Matthews, I believe, is a Supreme Court case. And again, the argument that the government is making here and the argument the Court considered in considering entrapment either as a defense or as a mitigating factor is this notion that they had the opportunity to withdraw at the time of the crime. Our argument is that the entrapment, as the Supreme Court has viewed it and as the Seventh Circuit en banc has explained, you're looking at what happened before the crime. Because by definition, entrapment defense is, yes, we committed the crime but something happened that made us commit the crime which should excuse it. And we believe that the government's argument on McKeever and Bigley, they're looking at the case very narrowly. And again, we think that that's exactly the error that the District Court committed when it reviewed or when it considered the entrapment as a mitigating factor in sentencing. Again, it's looking at what they did on the day of the event rather than what happened before. With respect to sentencing... All right, you've gone over your time, Ms. Hernandez. Thank you, Your Honor. The Court appointed you and Ms. Davis and Mr. Martin to represent the defendants and you provided your usual able assistance to the Court. Thank you. Thank you, Your Honor. Thank you.
judges: Henderson, Kavanaugh, Millett